UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROGER LEE MATTHIS,

Plaintiff,

v.

ROGER FRAZIER, et al.,

Defendants.

CIVIL ACTION NO.:
1:22-CV-04063-JPB

## **ORDER**

This matter is before the Court on Roger Frazier, Reginald McCain, Jubal Rogers and Quoshanna Williams's (collectively, "Defendants") Motion for Summary Judgment [Doc. 53].  This Court finds as follows:

## PROCEDURAL HISTORY

On October 11, 2022, Roger Lee Matthis ("Plaintiff"), proceeding *pro se*, filed this civil rights action against Defendants, all of whom are (or were) employed as law enforcement officers with the South Fulton Police Department. [Doc. 1-1].  After obtaining counsel, Plaintiff filed an Amended Complaint for Damages ("Amended Complaint").  [Doc. 11].  In the Amended Complaint, Plaintiff asserts four 42 U.S.C. § 1983 claims, federal and state malicious prosecution claims and a state law negligence claim.

Discovery in this matter closed on December 2, 2024.  Thereafter, on January 24, 2025, Defendants filed the instant Motion for Summary Judgment. [Doc. 53].  Although Plaintiff filed a brief in response to Defendants' motion and a response to Defendants' statement of material facts, Plaintiff failed to file an additional statement of material facts.[1]  Instead, Plaintiff simply asserted facts in his response briefing.  Moreover, Plaintiff's response to the statement of material facts fails to comply with the Local Rules.  The Local Rules provide that the Court

> will deem each of the movant's facts as admitted unless the respondent:  (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1(B)(1).

LR 56.1(B)(2)(a)(2), NDGa.  The Local Rules also state that "[t]he response that a party has insufficient knowledge to admit or deny is not an acceptable response." LR 56.1(b)(2)(a)(4), NDGa.  Here, Plaintiff denied one fact by stating that he could not "affirm or deny what knowledge [Defendants] had or did not have about the dispossessory action."  [Doc. 60, p. 2].  Plaintiff denied several other facts but

---

[1] The Local Rules provide that a respondent to a summary judgment motion shall include "[a] statement of additional facts which the respondent contends are material and present a genuine issue for trial."  LR 56.1(B)(2)(b), NDGa.

failed to support the denial with specific citations to evidence.  Id. at 6–9.  Indeed,

Plaintiff failed to cite to any evidence at all in his response to Defendants'

statement of material facts.  Id.

Ultimately, in accordance with the Local Rules, this Court will not consider

unsupported facts or facts that Plaintiff raises solely in his brief.  The Court will,

however, use its discretion to consider all facts that the Court deems material after

reviewing the record.  The Court will also ensure that Defendants' facts are

supported by the record.  The facts are provided below.

## STATEMENT OF FACTS

In 2020, Plaintiff rented a room in his home located at 6400 Polar Fox Court

to Terrill Terry.  [Doc. 52, p. 59].  The relationship, however, quickly deteriorated

after Plaintiff issued Terry a thirty-day notice to move out.  Id. at 40.  In fact, on

January 29, 2020, Plaintiff obtained a Family Violence Ex Parte Protective Order

("Plaintiff's TPO") against Terry.  [Doc. 11-2, p. 1].  In pertinent part, Plaintiff's

TPO granted Plaintiff possession of the residence and ordered Terry to leave.

[Doc. 60, p. 2].  On February 18, 2020, a judge dismissed Plaintiff's TPO.  Id.  On

the day that the TPO was dismissed, Plaintiff began the eviction process in the

Magistrate Court of Fulton County.  Id.  Defendants, however, were unaware of

these eviction proceedings.  Id.

On February 19, 2020, Terry obtained a Family Violence Ex Parte Protective Order ("Terry's TPO") against Plaintiff. [Doc. 52, p. 282]. Terry's TPO awarded Terry with sole and exclusive use of the residence located at 6400 Polar Fox Court. Id. at 283. Terry's TPO further stated that Plaintiff was

> ordered to leave the family residence immediately and law enforcement . . . is ordered to assist [Terry] in returning to the family residence and the removal of [Plaintiff]. [Plaintiff] is to immediately surrender to law enforcement . . . all and any keys, garage door openers and other security devices to the family residence and law enforcement is to ensure that these are given to [Terry].

Id.

On February 20, 2020, Terry contacted the South Fulton Police Department to request assistance from officers to serve his TPO. Officer Williams and Officer Frazier then met with Terry regarding his request. [Doc. 60, p. 4]. The video evidence shows that Terry presented Officer Williams and Officer Frazier with various documents, including Plaintiff's TPO, the order dismissing Plaintiff's TPO and Terry's TPO. [Doc. 54]. After reviewing the documents, Officer Williams and Officer Frazier agreed to assist Terry in serving his TPO and accompanied him to the residence. Id.

When Terry, Officer Williams and Officer Frazier arrived at the home, Officer Frazier instructed Terry to knock on the door by stating "you knock on this

4

door, this is your house, and we're not here for that." Id.  Terry knocked on the door approximately eight times.[2] Id.  Even though Plaintiff was inside the home, he did not answer the door.  Id.  As a result, about one minute after Terry first knocked, Officer Frazier asked Terry if he had the key.  Id.  Terry responded in the negative and told Frazier that Plaintiff had changed the locks.  Id.  Thereafter, Terry knocked again.  Id.  Like before, Plaintiff did not answer the door.  Id.  Then, approximately thirty seconds later, Terry knocked again.  Id.  After this series of knocks with no answer and with Terry looking to Officer Frazier for guidance, Officer Frazier told Terry that he could not tell him how to get into his own house. Id.  Officer Frazier went on to state that Terry had every right to be in the home and that Plaintiff did not.  Id.  Notably, Terry told Officer Frazier that Plaintiff could see him with the doorbell camera but was simply not answering the door.  Id. Shortly thereafter, about two minutes after the first knock, Terry shouldered his way through the door.  Id.  As soon as Terry opened the door, Plaintiff immediately fired two shots, hitting Terry with both.  Id.

After the shooting, Officer Frazier handcuffed Plaintiff and escorted him to the police vehicle.  Id.  During this time, Plaintiff stated things like "I thought

---

[2] The video evidence shows that the knock was a normal knock—not a banging or aggressive knock like Plaintiff claims.

someone was breaking into my house, and I have a restraining order against him." Id. Officer Frazier corrected Plaintiff by stating, "not anymore you don't, you don't have the right to be here, and he has an order against you." Id. Meanwhile, Terry can be heard sobbing and saying, "I asked you to serve the papers, I specifically asked." Id. Ultimately, Plaintiff was arrested and charged with aggravated assault and possession of a firearm during the commission of a felony. [Doc. 60, p. 8]. Plaintiff was released on a signature bond the following day. Id.

On February 22, 2020, Officer Williams, who was standing on the walkway behind Terry when he was shot, discovered a hole in the right sleeve of her police-issued jacket. [Doc. 53-9, p. 4]. Remembering that she felt a burning sensation after Plaintiff fired the shots, Officer Williams concluded that she must have been hit by an errant bullet when Plaintiff shot Terry. Id. at 4–5. Thereafter, Officer Williams discussed the damage in her jacket with Captain Rogers. Id. at 5.

On February 25, 2020, Plaintiff returned to the police station to obtain a copy of the police reports. [Doc. 60, p. 9]. While at the police station, Captain Rogers informed Plaintiff that Officer Williams was hit with a stray bullet and that he was going to be arrested for aggravated assault. Id. at 10. After speaking with Plaintiff, however, Captain Rogers decided to issue Plaintiff a citation for reckless conduct. Id. Plaintiff was thus not jailed and was able to leave the precinct. Id.

6

On November 22, 2021, the district attorney dismissed the charges.  Id.  The dismissal document stated that "the facts of this case have been reviewed with the arresting officer and although it appears that probable cause existed for the . . . arrest, the decision of the District Attorney at this time is not to prosecute."  Id. (emphasis omitted).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A material fact is any fact that "is a legal element of the claim under the applicable substantive law which might affect the outcome of the case."  Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).  A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Ultimately, "[t]he basic issue before the court on a motion for summary judgment is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Allen, 121 F.3d at 646 (citation omitted).

The party moving for summary judgment bears the initial burden of showing that no genuine issue exists as to any material fact, "and in deciding whether the movant has met this burden[,] the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party." Id.  After the movant satisfies this initial burden, the nonmovant bears the burden of showing specific facts that indicate summary judgment is improper because a material issue of fact does exist.  Id.  However, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).  If the record taken as a whole cannot lead "a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

## DISCUSSION

Defendants seek summary judgment as to all counts of Plaintiff's Amended Complaint.  Specifically, Defendants assert that they are entitled to qualified immunity, that Plaintiff cannot establish a constitutional violation and that Plaintiff failed to set forth a claim under state law.  The Court will first address Defendants' qualified immunity argument.

## I.    Qualified Immunity

Defendants contend that the doctrine of qualified immunity entitles them to summary judgment as to Plaintiff's federal claims.  While Plaintiff asserted four separate federal claims pursuant to 42 U.S.C. § 1983, the only one at issue is the claim for unreasonable seizure in violation of the Fourth Amendment.  In this claim, Plaintiff essentially asserts that the arrests on February 20 and February 25 violated the Constitution because Defendants lacked probable cause.[3]

"Qualified immunity protects public officers from undue interference with their duties and from potentially disabling threats of liability."  Paez v. Mulvey, 915 F.3d 1276, 1284 (11th Cir. 2019) (citation modified).  Indeed, qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Corbitt v. Vickers, 929 F.3d 1304, 1311 (11th Cir. 2019).

---

[3] Plaintiff also brought claims for violation of due process, failure to train and malicious prosecution.  Even though Defendant moved for summary judgment as to these claims, Plaintiff completely failed to respond to arguments concerning the claims or present any evidence related to the claims.  "A party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed.  Also, when a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned."  Jones v. Bank of Am., N.A., 564 F. App'x 432, 434 (11th Cir. 2014) (citation modified).

Importantly, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Id.

"[T]o establish qualified immunity, a defendant first must show that [he] was acting within the scope of [his] discretionary authority at the time of the alleged misconduct." Paez, 915 F.3d at 1284. Here, it is undisputed that Defendants were acting within their discretionary authority when they arrested Plaintiff. See Wood v. Kesler, 323 F.3d 872, 877 (11th Cir. 2003) (holding that the officer was acting within the course and scope of his discretionary authority when he charged and arrested an individual during a traffic stop). Therefore, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Paez, 915 F.3d at 1284.

To defeat a qualified immunity defense, the plaintiff must show that: (1) the defendant violated a constitutional right; and (2) the violated right was clearly established at the time of the incident. Id. Crucially, "both elements of this test must be present for an official to lose qualified immunity." Rivera v. Carvajal, 777 F. App'x 434, 437 (11th Cir. 2019) (citation modified). The Court will begin by analyzing whether Defendants violated Plaintiff's constitutional rights when they arrested him on February 20, 2025.

**A.    February 20, 2025 Arrest**

Plaintiff alleges that Officer Williams and Officer Frazier violated his Fourth Amendment rights when they arrested him without a warrant for aggravated assault in violation of O.C.G.A. § 16-5-21(a) and possession of a firearm during the commission of a felony in violation of O.C.G.A. § 16-11-106(b).

It is well settled that "the Constitution permits an officer to arrest a suspect without a warrant if there is probable cause to believe that the suspect has committed or is committing an offense." Michigan v. DeFillippo, 443 U.S. 31, 36 (1979). The Eleventh Circuit Court of Appeals has held that

> [p]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. Probable cause is not a high bar. Far from requir[ing] convincing proof that [an] offense was committed, probable cause is a flexible and fluid concept, that looks instead to the totality of the circumstances to determine the reasonableness of the officer's belief that a crime has been committed. Accordingly, [t]he test for probable cause is not reducible to precise definition or quantification, and [f]inely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence . . . have no place in the [probable-cause] decision.

Paez, 915 F.3d at 1286 (alterations in original) (internal quotation marks and citations omitted). Probable cause "requires less than a preponderance of the evidence," and therefore it "does not require that it be more likely than not the person arrested for a crime is actually guilty of it." Davis v. City of Apopka, 78

F.4th 1326, 1334 (11th Cir. 2023).  Indeed, "[p]robable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed."  Brown v. City of Huntsville, 608 F.3d 724, 734 (11th Cir. 2010).

As stated previously, Defendants raised the defense of qualified immunity. To receive qualified immunity, "an officer need not have actual probable cause, but only 'arguable' probable cause."  Grider v. City of Auburn, 618 F.3d 1240, 1257 (11th Cir. 2010).  "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as [the defendants] could have believed that probable cause existed to arrest [the plaintiff.]"  Id. (citation modified).  This rule exists because "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and in such cases those officials should not be held personally liable." Id.

Defendants contend that they had probable cause, or arguable cause, to arrest Plaintiff for aggravated assault and possession of a firearm.  Conversely, Plaintiff claims that Officer Williams and Officer Frazier lacked probable cause because he "had every legal right to defend his home against the forcible entry of Terry."

[Doc. 59, p. 10].  In Plaintiff's view, both Officer Williams and Officer Frazier "witnessed Terry forcibly break down the front door of [Plaintiff's] home," and "[a]ny citizen in Georgia would have been justified" in shooting the intruder.  Id. at 11.  The Court disagrees with Plaintiff that there was no basis to believe that there was probable cause.

The critical issue that the Court must decide is whether Officer Williams and Officer Frazier had probable cause or arguable probable cause to arrest Plaintiff for aggravated assault and possession of a firearm.  Importantly, "what counts for qualified immunity purposes relating to probable cause to arrest is the information known to the defendant officers or officials at the time of their conduct, not the facts known to the plaintiff then or those known to a court later." Jones v. Cannon, 174 F.3d 1271, 1283 n.4 (11th Cir. 1999).

In pertinent part, a person commits the offense of aggravated assault when that person assaults:  (1) with the intent to murder, to rape or to rob; or (2) with a deadly weapon.  O.C.G.A. § 16-5-21(a).  The crime of possession of a firearm during the commission of a felony is defined as "any person who shall have on or within arm's reach of his or her person a firearm . . . during the commission of, or the attempt to commit . . . any crime against or involving the person of another . . . and which crime is a felony."  O.C.G.A. § 16-11-106(b) (citation modified).

The undisputed evidence in this case shows that on February 20, 2025, Terry requested assistance from Officer Williams and Officer Frazier to serve a protective order and help him gain access to his home. According to Terry's TPO, which was reviewed by both Officer Williams and Officer Frazier, a judge awarded Terry exclusive use and possession of the home located at 6400 Polar Fox Court. Moreover, Terry's TPO indicated that Plaintiff had no right to be in the home and was not permitted to stay in the home. Significantly, Officer Williams and Officer Frazier had no knowledge that Plaintiff had initiated eviction proceedings the day before. Indeed, it is undisputed that Officer Williams and Officer Frazier's only knowledge before going to the home was that one judge dismissed Plaintiff's TPO and another awarded Terry an active restraining order that gave him exclusive rights to the property.

Video evidence demontrates that once Terry, Officer Williams and Officer Frazier arrived at the home, Terry calmly knocked on the door to gain entry into the home—a home that a judge said he had exclusive access to. The video also reveals that Plaintiff had a doorbell camera and that Terry told Officer Williams and Officer Frazier that Plaintiff could see him with the camera. After about two minutes of knocking, Terry shouldered his way through the front door. As soon as Terry crossed the threshold, Plaintiff immediately shot him twice.

The Court finds that Officer Williams and Officer Frazier had probable cause to believe that Plaintiff had committed the offenses of aggravated assault and possession of a firearm because they (1) believed that Terry had exclusive use of the home and a right to be in the home, (2) believed that Plaintiff could see Terry with the doorbell camera when Terry was knocking and (3) witnessed Plaintiff shoot Terry as soon as the door was opened.  At the very least, arguable probable cause existed because a person of reasonable caution could have believed that Plaintiff committed the crimes in question.

Plaintiff argues that Officer Williams and Officer Frazier are not entitled to qualified immunity because Terry was clearly breaking and entering.  The Court is not persuaded that this was clear because the TPO stated that Terry had exclusive use of the home.  In the Court's view, it is not breaking and entering when trying to obtain entry into a home that you have permission to be in.  Notably, whether Plaintiff could have been acting in self-defense is immaterial.  The Eleventh Circuit has held that "[s]o long as it is reasonable to conclude from the body of evidence as a whole that a crime was committed, the presence of some conflicting evidence or a possible defense will not vitiate a finding of probable cause."  Paez, 915 F.3d at 1286.  Given the events that Officer Williams and Officer Frazier

witnessed, it was reasonable for them to conclude that Plaintiff was lying in wait instead of acting in self-defense at the time he shot Terry.

In sum, after considering the totality of the circumstances, the Court finds that Officer Williams and Officer Frazier are entitled to qualified immunity as to the February 20, 2025 arrest of Plaintiff. The undisputed evidence shows that Officer Williams and Officer Frazier had probable cause, or, at the very least, arguable probable cause to arrest Plaintiff for aggravated assault and possession of a firearm with intent to commit a felony. Consequently, to the extent that Defendants seek summary judgment on this basis, the motion is **GRANTED**.

### B.    February 25, 2025 Arrest

The February 25, 2025 arrest[4] stems from Officer Williams's belief that she was also shot. Plaintiff contends that Captain Rogers violated his Fourth Amendment rights because Captain Rogers "initially handcuffed him and told him that he was [being] arrested for aggravated assault on a police officer" before deciding to ultimately issue Plaintiff a citation for reckless conduct. [Doc. 59, p. 13]. As to Officer McCain, Plaintiff contends that he violated his Fourth

---

[4] Although Plaintiff characterizes the February 25 law enforcement encounter as an arrest, Plaintiff was only briefly detained for questioning and then released.

Amendment rights by issuing a "completely false" police report regarding the shooting. Id.

The Court must decide whether Captain Rogers and Officer McCain had probable cause or arguable probable cause to charge Plaintiff with reckless conduct. Similar to Plaintiff's previous argument, Plaintiff contends that no probable cause existed because he had "every right to defend his home against an intruder who violently forced his way into [the] home." Id. at 14. He further argues that because he "had no knowledge that either [Officer Williams or Officer Frazier] were on his property," "he could not possibly have consciously disregarded the risk that his gun shot aimed at Terry could have endangered their safety." Id. at 15.

As an initial matter, the Court need not analyze whether Captain Rogers and Officer McCain had probable cause to support an arrest for aggravated assault on a police officer. In the Eleventh Circuit, "the validity of an arrest does not turn on the offense announced by the officer at the time of the arrest. So long as an officer has arguable probable cause to arrest for *any* offense, qualified immunity will apply." Merenda v. Tabor, 506 F. App'x 862, 865 (11th Cir. 2013) (emphasis added). The Court will thus focus on whether Captain Rogers and Officer McCain had probable cause to issue Plaintiff a citation for reckless conduct.

In Georgia, reckless conduct is defined as follows:

> A person who causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his or her act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation is guilty of a misdemeanor.

O.C.G.A. § 16-5-60(b).

The uncontroverted evidence in this case indicates that on February 22, 2020, Officer Williams discovered a hole in her jacket. After remembering that she felt a burning sensation at the time of the shooting, Officer Williams reported to Captain Rogers that she believed that she was hit when Plaintiff shot Terry. Captain Rogers did more than take Officer Williams's word that she had been shot. Captain Rogers also examined Officer Williams's police jacket and determined that the damage was consistent with a bullet hole. Importantly, review of the video evidence shows that Officer Williams was standing at or near the door at the time of the shooting, presumably where Plaintiff could see her if he used the doorbell camera. In fact, the video shows that Terry, Officer Frazier and Officer Williams were outside of the home for several minutes before the shooting occurred.

The totality of the circumstances shows that sufficient probable cause or arguable probable cause supported the citation for reckless conduct, especially after considering the amount of time that Officer Williams was outside of

Plaintiff's home (which had a doorbell camera), her close proximity to Plaintiff at the time of the shooting and the hole in her jacket. As such, the Court finds that Captain Rogers and Officer McCain are entitled to qualified immunity as to the February 25, 2025 citation for reckless conduct. Therefore, to the extent that Defendants seek summary judgment on this basis, the motion is **GRANTED**.

## II.    State Law Claims

In this case, Plaintiff asserts two state law claims: one for malicious prosecution and the other for negligent failure to perform ministerial duties. As to these state law claims, Defendants contend, among other things, that official immunity entitles them to summary judgment. Plaintiff did not respond to this argument. Indeed, Plaintiff only responded to Defendants' qualified immunity argument relating to one of the federal claims.

As an initial matter, Defendants are entitled to summary judgment because Plaintiff entirely failed to respond to Defendants' arguments. "Failure to respond to the opposing party's summary judgment arguments regarding a claim constitutes an abandonment of that claim and warrants the entry of summary judgment for the opposing party." Burnett v. Northside Hosp., 342 F. Supp. 2d 1128, 1140 (N.D. Ga. 2004). This is the rule because the Court "is not under a duty to exercise imagination or conjure what a party might have argued, but did not argue; nor is

this Court obliged to do Plaintiff's work for him." Reid v. Hasty, No. 1:07-CV-2475, 2009 WL 10711917, at *9 (N.D. Ga. Nov. 5, 2009). Thus, to the extent that Defendants seek summary judgment as to Plaintiff's state law claims, the motion is **GRANTED**.

In an abundance of caution, the Court will nevertheless briefly address the merits. As stated previously, Defendants assert that they are entitled to official immunity. Under Georgia law, "[t]he doctrine of official immunity offers public officers and employees limited protection from suit in their personal capacities." Shultz v. Lowe, 874 S.E.2d 842, 845 (Ga. Ct. App. 2022). While official immunity offers some protection, it is not available to employees and officials who negligently perform their ministerial functions or those who act with "actual malice or with actual intent to cause injury in the performance of their official functions." Ga. Const. art. I, § II, para. IX(d).

The decision to arrest Plaintiff without a warrant and subsequently charge him with crimes are discretionary acts which entitle Defendants to official immunity absent a showing of actual malice or actual intent to injure. See Taylor v. Waldo, 709 S.E.2d 278, 281(Ga. Ct. App. 2011) (holding that the decision to arrest, even if warrantless and without probable cause, is a discretionary act). "Actual malice is a demanding standard . . . ." Black v. Wigington, 811 F.3d 1259,

1266 (11th Cir. 2016).  It "requires a deliberate intention to do wrong."  Bailey v. Wheeler, 843 F.3d 473, 485 (11th Cir. 2016).  "'Intent to injure' is also a high bar," Yancey v. Tillman, 696 F. Supp. 3d 1310, 1322 (N.D. Ga. 2023), and requires an "actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury," Kidd v. Coates, 518 S.E.2d 124, 125 (Ga. 1999) (citation modified).

Here, Plaintiff has failed to show that Defendants acted with actual malice. Indeed, given that Plaintiff did not defend his state law claims, it follows that he identified no evidence suggesting that Defendants acted with a deliberate intention to do wrong.  Plaintiff also failed to demonstrate that Defendants intentionally intended to injure him in any way.  Because Plaintiff failed to present any evidence of actual malice or actual intent to cause injury, Defendants are entitled to summary judgment as to the state claims.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment

[Doc. 53] is **GRANTED**.[5]  The Clerk is **DIRECTED** to close this case.

**SO ORDERED** this 26th day of June, 2025.

J. P. BOULEE
United States District Judge

---

[5] The Court recognizes that it did not discuss Plaintiff's claim for attorney's fees and costs and expenses of litigation.  Because Plaintiff's claims are not viable, an award of attorney's fees and costs are improper.